FILED
2019 May-17 PM 03:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CINDY ARRINGTON** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | 5:18-cv-08011-LSC |
| | ) | (5:16-cr-00305-LSC-JHE-3) |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OF OPINION**

This Court has for consideration Petitioner Cindy Arrington's ("Arrington's") motion to vacate, set aside, or correct her sentence filed pursuant to 28 U.S.C. § 2255. (Doc. 1.) The United States has responded in opposition to the motion. (Doc. 5.) For the following reasons, the motion is due to be denied, and no evidentiary hearing is warranted.

**I.    Background**

On September 28, 2016, a federal Grand Jury of the Northern District of Alabama indicted Arrington on two charges: one count of conspiring with others to possess and distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C) (Count Two), and one count of aiding and abetting the

1

possession of methamphetamine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Three). Arrington was arrested and made her initial appearance in Court on November 1, 2016. As she was indigent, the Court appointed counsel for Arrington.

Arrington's counsel assisted her in negotiating a plea agreement with the U.S. Attorney's Office. As part of the plea agreement, the Government agreed to dismiss Count Two of the indictment and make certain recommendations relative to sentencing. Arrington also signed an appeal waiver as part of the plea agreement. By signing the waiver, Arrington agreed to give up the right to challenge her conviction, her sentence, or the way in which her sentence was determined in a § 2255 motion, subject to some exceptions, including claims of ineffective assistance of counsel.

On December 13, 2016, this Court held a change of plea hearing. At the plea hearing, Arrington admitted to using methamphetamine in the days leading up to the proceeding, in violation of her bond conditions, but she assured the Court that she was not under the influence of any substance at the time of the hearing. This Court reviewed Arrington's rights, made various inquiries of her, and discussed her plea agreement and the appeal waiver that it contained. This Court accepted her guilty plea to Count Three of the indictment and adjudicated her guilty.

The Court indicated its inclination to remand Arrington to custody pending sentencing in response to her methamphetamine use, which was in violation of her bond conditions. Arrington, through counsel, requested permission to attend an out-of-state drug treatment facility in lieu of incarceration. In sum, Arrington's attorney requested that he be permitted to transport Arrington (at his own expense) to the facility. This Court granted this request and ordered that Arrington report to the facility for in-patient care. The Court further warned Arrington not to leave the facility without permission from court officials and to contact the probation office should she be released from the facility.

In the days following the plea hearing, a probation officer filed a petition to revoke Arrington's bond based on allegations that, within hours of her arrival at the out-of-state treatment and recovery center on December 13, 2016, Arrington left the facility without participating in drug treatment, and that Arrington further did not report to the Probation Office as ordered by this Court.

On December 27, 2016, Arrington was arrested. Following a hearing on January 10, 2017, this Court revoked Arrington's bond and remanded her to custody pending sentencing.

The Presentence Investigation Report ("PSR") generated in advance of Arrington's sentencing summarized the facts of her bond violation:

> The defendant submitted an initial drug screen on November 1, 2016, which tested positive for amphetamine, methamphetamine, and marijuana. . . . On December 13, 2016, the defendant was ordered by Judge Coogler to enter an in-patient drug-treatment program at Pine and Cady Hill in Columbus, Mississippi. However, within several hours of her arrival, the defendant contacted United States Probation Officer Yolanda Pearson, and she expressed a desire to leave the facility. Officer Pearson instructed the defendant to surrender to the United States Marshal Service immediately if she left the program. The defendant did not self-surrender as instructed, and she was ultimately arrested by the United States Marshal Service on December 22, 2016.

(Doc. 60 at 5.) In calculating Arrington's offense level, the PSR cited Arrington's failure to self-surrender as directed after leaving the treatment facility as evidence that Arrington had not clearly accepted responsibility. (*Id.* at 7-8.) Further noting that the Court was in a unique position to evaluate a defendant's acceptance of responsibility, the PSR omitted a reduction for acceptance of responsibility in its proposed Guideline calculations. (*Id.* at 7-8, 9.)

On May 7, 2017, Arrington's counsel filed a Defense Sentencing Memorandum in which he presented mitigating circumstances and argument surrounding Arrington's bond violation in support of a challenge to the proposed offense level computation in the PSR. He made similar arguments at Arrington's sentencing hearing on May 9, 2017. At her hearing, this Court set out its reasoning and overruled Arrington's counsel's objection to the PSR. The Court then made

findings regarding the applicable sentencing guidelines and sentenced Arrington to 110 months' imprisonment for Count Three.

Arrington did not file a direct appeal. Arrington filed the instant § 2255 motion, *pro se*, on April 13, 2018, raising several claims of ineffective assistance of counsel and the argument that her sentence was disproportionately high. The motion is timely and non-successive. *See* 28 U.S.C. §§ 2255(f)(1), 2255(h), 2244(b)(3)(A).

## II. Discussion

### A. Standard

In litigation stemming from a § 2255 motion, "'[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the [movant's] allegations are affirmatively contradicted by the record.'" *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520-21 (5th Cir. 1979)). However, a petitioner is entitled to an evidentiary hearing if, "'accept[ing] all of the . . . [movant's] alleged facts as true,'" the movant has "'allege[d] facts which, if proven, would entitle him to relief.'" *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (internal citations omitted).

### B. Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to procedural bar for failing to raise them on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim has two components: first, the petitioner must show that the counsel's performance was deficient; second, the petitioner must show that the counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first component, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The second component is satisfied only when the defendant shows that there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In examining counsel's performance, the Court should be "highly deferential." *Id.* at 689. The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decisions about which

competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry her burden by offering bare accusations and complaints, but rather "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Where a petitioner fails to show that her counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the court does consider this prong, the petitioner must show that counsel's errors were prejudicial and deprived the defendant of a "fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden is met by establishing by a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. *Williams v. Threatt*, 529 U.S. 362, 391–93 (2000); *Strickland*, 466 U.S. at 692.

To establish prejudice in the context of a guilty plea, a movant must establish that, but for her counsel's unprofessional errors, she would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 53, 59 (1985). In the guilty plea context, there is a strong presumption that an attorney's actions are reasonable: "We recognize that in deciding whether to enter a plea, defense

lawyers carefully balance both 'opportunities and risks' without fully knowing the strength of the State's case. Therefore, we must, as we do for all *Strickland* claims, afford 'substantial deference' to a lawyer's strategic choices." *Id.* (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. The defendant must show that no competent counsel would have taken the action that her counsel took. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

### 1. Alleged Ineffective Bargaining for Plea Agreement

Arrington argues that her counsel was ineffective because he "took/accepted" the first plea agreement offered by the Government, although she makes no further allegation explaining how this alleged action constituted ineffective assistance or how she was prejudiced by it. The claim fails.

As an initial matter, it was appropriate for Arrington's counsel to communicate the Government's offer to her. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("[A]s a general rule, defense counsel has the duty to communicate formal

offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). Instead, allowing an offer to expire without allowing the defendant to consider it would amount to ineffective assistance of counsel. *Id.*

The Court also notes that the plea agreement reached between Arrington and the U.S. Attorney's Office included several terms benefiting Arrington, such as agreement by the Government to: dismiss one of the two counts against her; recommend that her offense level be reduced to reflect her acceptance of responsibility; recommend that her offense level not be increased in relation to possession of a firearm (possessed by a co-defendant); and recommend that she be sentenced at the low end of her guideline range, as determined by the Court. Arrington has not shown that no constitutionally adequate attorney would have recommended acceptance of such a plea bargain under the facts and circumstances of this case.

Moreover, Arrington's statements of record undercut her claim that her attorney provided unsatisfactory service in connection with negotiating her plea agreement. When asked at her change of plea hearing (after the plea agreement had been reached), Arrington raised no concerns about the performance of her attorney. Instead, when asked by the Court how her attorney had performed up to that point, Arrington assured the Court that he had "done very well" and

disclaimed any complaint about his representation. (Doc. 68 at 3.) "There is a strong presumption that the statements made during the colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) (citation omitted). A defendant bears a heavy burden to show that statements made under oath were false. *United States v. Rogers*, 848 F.2d 116, 168 (11th Cir. 1988). She further testified that no one had threatened or coerced her to plead guilty, that she wanted to plead guilty because she was, in fact, guilty, and that she understood that she could plead not guilty and go to trial. (Doc. 68 at 15–17.)

In sum, Arrington has not presented any evidence of error by her counsel in offering the plea agreement to her that would have led to her going to trial. Instead, her testimony in Court shows that she knowingly accepted the plea agreement offered by the U.S. Attorney's Office. Thus, her claim for ineffective assistance of counsel based on the plea agreement fails.

### 2. Alleged Failure to Properly Present Various Arguments for Sentence Reduction

Arrington also presents several arguments related to her counsel's performance at her sentencing.

First, she argues that her counsel failed to "properly" argue to the Court that she accepted responsibility for her actions and was entitled to a sentence reduction under the Acceptance of Responsibility provision of the Federal

Sentencing Guidelines, U.S.S.G. § 3E1.1. Arrington does not "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Instead, Arrington offers the bare accusation that her counsel did not argue "properly." Arrington has not overcome the "strong presumption" that her counsel's conduct fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The record reflects that Arrington's counsel argued for an acceptance of responsibility reduction. In the Defense Sentencing Memorandum, counsel objected to the Probation Officer's recommendation that Arrington has not accepted responsibility because she violated the Court's order by leaving the treatment facility without reporting to the Probation Office. (Doc. 59 at 3.) Counsel argued that the Court should opt for a "downward departure" from the sentencing guidelines and should "give some deference to Ms. Arrington's voluntary plea of guilty." (*Id.*) During Arrington's sentencing hearing, her counsel orally advocated for an acceptance of responsibility reduction:

> COUNSEL: THE ONLY DIFFERENCE THAT WE WOULD TAKE WITH THE PROBATION OFFICE'S WOULD BE THEIR ASSESSMENT THAT MS. ARRINGTON SHOULD NOT RECEIVE CREDIT FOR A DOWNWARD DEPARTURE
>
> THE COURT: FOR HER ACCEPTANCE?

COUNSEL: ACCEPTANCE OF RESPONSIBILITY, YES, SIR.

(Doc. 66 at 2–3.) The Court, however, overruled Arrington's counsel's objection. The Court has "broad discretion to grant or deny a reduction under § 3E1.1." *United States v. Mathews*, 874 F.3d 698, 709 (11th Cir. 2017).

Second, Arrington argues that her counsel failed to "adequately" present evidence that she qualified for a minor role adjustment under U.S.S.G. §3B1.2. However, her counsel did argue in the Defense Sentencing Memorandum that Arrington's limited role in the underlying crime should be a mitigating factor in her sentencing. (Doc. 59 at 2.) He argued that Arrington "never saw the drugs; she never touched the drugs; she would have had no knowledge of the purity or impurity of the drugs. She was, indeed, a tangential 'aider and abettor.'" (*Id.* at 3.) At sentencing, counsel again argued that the Court should consider the "relative *de minimis* conduct" of Arrington that led to her initial arrest. (Doc. 66 at 7.) Courts have discretion when determining whether a defendant qualifies for a minor role adjustment. *United States v. Rodriguez De Varon*, 175 F.3d 930, 938 (11th Cir. 1999). Whether a defendant qualifies for a minor role adjustment is a factual decision. *Id.* Arrington has failed to overcome the presumption that her counsel's written and oral arguments for mitigation fall within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, her claim fails.

Third, Arrington argues that her counsel did not "effectively" argue for treatment under the "safety valve" provision of the Guidelines, U.S.S.G. § 5C1.2. That provision did not apply to Arrington because she had more than one criminal history point. *See* U.S.S.G. § 5C1.2; (Doc. 60 at 8 ¶ 20). Arrington does not identify what evidence her counsel could have presented showing that she qualified for a safety-valve reduction.

Finally, Arrington alleges that her counsel did not "effectively present facts surrounding [her] withdraw[a]l from the rehab program due to [her] lack of ability to pay." However, her counsel presented Arrington's claimed financial difficulties to the Court at her sentencing:

> COUNSEL: I DRAW THE COURT'S ATTENTION, RESPECTUFULLY, TO . . . THE MITIGATING CIRCUMSTANCES SURROUNDING HER WALKING AWAY FROM THAT REHAB FACILITY, SHE DIDN'T EXPECT SHE WOULD HAVE TO PAY ALL THAT MONEY, AND SHE DIDN'T HAVE A DOLLAR.

(Doc. 66 at 8.) Her counsel had also argued in the Defense Sentencing Memorandum that Arrington did not have the money to pay for drug-treatment facility. (Doc. 59 at 1.) Arrington does not allege that her counsel made no argument at all and instead takes issue with the way that he presented the

argument. Counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

For these reasons, Arrington's claims of ineffective assistance of counsel with regard to arguments made for sentence reductions fail.

B. **Claim that Sentence was Disproportionately High**

Arrington's other argument is that her sentence is disproportionately high as compared to the sentence of a co-defendant. As an initial matter, Arrington's claim is precluded because she entered into a valid sentence-appeal waiver as part of her plea agreement. *See Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005). Sentence-appeal waivers are enforceable if they are entered into knowingly and voluntarily. *Id.* at 1341. For a sentence-appeal waiver to be enforceable, "[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Id.* (quoting *United States v. Bushert*, 997 F.2d 1343 (11th Cir. 1993)).

The sentence-appeal waiver Arrington signed as part of her plea agreement applied to motions brought under § 2255 with three exceptions: (1) sentences imposed in excess of the statutory maximum sentence; (2) a sentence imposed in

excess of the advisory guideline sentencing range; and (3) ineffective assistance of counsel. (Doc. 32 at 7–8.) Arrington's claim that her sentence is disproportionate to that of a co-defendant does not fall within any of the exceptions to her sentence-appeal waiver.

Further, the Court specifically questioned Arrington about her sentence-appeal waiver and it is manifestly clear from the record that she understood the full significance of the waiver:

> THE COURT: TURN TO PAGE EIGHT. THAT LOOKS LIKE YOUR SIGNATURE TO ME THERE.
>
> THE DEFENDANT: YES, YOUR HONOR.
>
> THE COURT: IS THAT YOUR SIGNATURE?
>
> THE DEFENDANT: YES, YOUR HONOR IT IS.
>
> THE COURT: WHEN YOU SINGED IT THERE ON PAGE EIGHT, WERE YOU ACKNOWLEDGING, STIPULATING, AND AGREEING AND TELLING ME THAT YOU HAVE SEEN THE SECTION THAT PRECEDES YOUR SIGNATURE THAT APPEARS TO ME TO BE WAIVING YOUR RIGHT TO APPEAL AND WAIVING YOUR RIGHT TO FILE A POST-CONVICTION PETITION EXCEPT UNDER THE LIMITED CIRCUMSTANCES THAT ARE CONTAINED IN THAT SECTION

|                | RIGHT ABOVE YOUR SIGNATURE? IS THAT WHAT YOU WERE DOING? |
|----------------|---|
| THE DEFENDANT: | YES. |
| THE COURT:     | AND YOU KNEW IT WAS IN THERE; IS THAT CORRECT? |
| THE DEFENDANT: | YES, YOUR HONOR, I DID. |

(Doc. 68 at 14.) Because the record indicates that Arrington knowingly entered into the sentence-appeal waiver, the waiver is enforceable and the challenge to her sentence fails.

Even without the sentence-appeal waiver, however, Arrington's claim fails, because her sentence was not disproportionate to the offense conduct. The Eighth Amendment prohibits "extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). When addressing a challenge to the proportionality of a sentence, the reviewing court "must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed." *United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000). If the sentence is grossly disproportionate to the offense committed, the court will then consider "the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions."

*Id.* If a sentence is not grossly disproportionate to the crime, a comparative analysis of other sentences is not necessary. *Id.* Outside of capital punishment, "successful challenges to the proportionality of particular sentences [will be] exceedingly rare." *Solem*, 463 U.S. at 289–90 (quoting *Hutto v. Davis*, 454 U.S. 370, 374 (1982)). Generally, when a sentence is within the statutory limits, it is not grossly disproportionate to the crime. *United States v. Flores*, 572 F.3d 1254, 1268 (11th Cir. 2009) (citing *United States v. Moriarty*, 429 F.3d 1012 (11th Cir. 2005)). The party challenging the reasonableness of a sentence bears the burden of establishing that the sentence is unreasonable. *Id.* at 1270.

Here, Arrington states: "I received 10 months less than the co-defendant who was sentenced under the major role. Yet I was not even at the drug bust or was ever caught with drugs on my person." (Doc. 1 at 6.) Yet Arrington has not established that her sentence is disproportionate to *her* offense conduct, which is the threshold inquiry, much less account for the factual differences between her case and her co-defendant's case. Indeed, Arrington's sentence was certainly within statutory limits, and she has failed to account for her violation of the Court's bond conditions, a factor not at issue in her co-defendant's case:

> THE COURT: SO, YOU ARE GOING TO SPEND EXTRA TIME IN PRISON OVER THIS. I THINK AN APPROPRIATE ADDITION WOULD BE TWO MONTHS MORE

17

| | |
|---|---|
| | THAN THE LOW END OF THE GUIDELINE RANGE. |
| THE DEFENDANT: | YES, YOUR HONOR. |
| THE COURT: | BECAUSE OF THE TIME - - YOU COULD HAVE COME RIGHT BACK. YOU KNEW THAT I WAS GOING TO TAKE YOU INTO CUSTODY AND YOUR LAWYER TALKED ME OUT OF IT TO GO TO THIS TREATMENT. YOU COULD HAVE COME RIGHT BACK AND YOU MADE THE DECISION NOT TO. |

(Doc. 66 at 12.)

Because Arrington's sentence is not grossly disproportionate to her crime, *see Flores*, 572 F.3d at 1268, the Court need not engage in a comparative analysis of other sentences. For these reasons, Arrington's claim that her sentence was disproportionate fails.

## III. Conclusion

For the aforementioned reasons, Arrington's § 2255 motion is due to be denied and this action dismissed with prejudice.

Additionally, the Court declines to issue a certificate of appealability. This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable and wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted). Arrington's claims do not satisfy either standard. Accordingly, insofar as an application for a certificate of appealability is implicit in Arrington's motion, it is due to be denied.

A separate closing order will be entered.

**DONE** AND **ORDERED** ON MAY 17, 2019.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704